# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5573-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ELMO M. RIVADENEIRA,

     Defendant-Appellant.

_____

> Submitted April 1, 2020 – Decided May 19, 2020
>
> Before Judges Gooden Brown and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 07-03-0435.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Janet Anne Allegro, Designated Counsel, on the briefs).
>
> Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the briefs).
>
> Appellant filed a supplemental pro se brief.

PER CURIAM

Without granting an evidentiary hearing, the trial court entered a February 1, 2018 order, denying defendant's petition for post-conviction relief (PCR) based on newly discovered evidence and ineffective assistance of counsel (IAC). Following a limited remand to address whether newly discovered FBI records warranted a change in the PCR court's prior denial, the court entered a September 12, 2019 order, "find[ing] the newly discovered evidence [did] not change th[e] [c]ourt's previous decision." Defendant now appeals, challenging the denial of his PCR petition, raising substantially the same arguments rejected by the PCR court, and urging us to reverse and remand for an evidentiary hearing or, in the alternative, a new trial. Based on our review of the record and the applicable legal principles, we affirm.

Following a 2011 jury trial, defendant was convicted of first-degree kidnapping, N.J.S.A. 2C:13-1(b); three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); fourth-degree child abuse, N.J.S.A. 9:6-1 and -3; third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a); first-degree robbery, N.J.S.A. 2C:15-1; third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b). The convictions stemmed from defendant forcibly abducting a sixteen-year-old,

A.T.,[1] on May 17, 2005, while she was walking home, and driving her to deserted locations overgrown with weeds where he repeatedly raped her before ultimately releasing her at a car repair facility. In addition to A.T., the original indictment included similar charges involving two other victims, V.S. and A.R., both of whom were severed for trial purposes. At the time of trial, defendant was also suspected of committing other sexual assault related offenses involving different victims in the New Jersey and New York metropolitan area. However, the State was precluded from introducing evidence of other crimes at trial pursuant to N.J.R.E. 404(b).[2]

We incorporate herein the facts set forth in State v. Rivadeneira, No. A-3348-11 (App. Div. May 4, 2016) (slip op. at 2-3), certif. denied, 227 N.J. 239 (2016), wherein we affirmed the convictions and aggregate fifty-year No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, sentence, but remanded "for the limited purpose" of "correcting . . . errors in the judgment of conviction (JOC),"

---

[1] We use initials to protect the privacy of the victims. See N.J.S.A. 2A:82-46; R. 1:38-3(c)(9), (12).

[2] In denying the State's motion, the trial court found there was "nothing in any of these cases that would satisfy the [State v. Cofield, 127 N.J. 328 (1992)] analysis in terms of identification sufficient to justify its admissibility under [N.J.R.E.] 404(b)." However, the court "warn[ed]" defense counsel that if "the door" was "open[ed]," then the State could use the evidence "in rebuttal."

none of which "affect[ed] the aggregate term." In our decision, we detailed the proofs adduced at trial, recounting A.T.'s testimony that "the assailant wore a condom and, after the assaults, . . . wiped her genital and anal areas with a liquid, which he said would avoid leaving evidence on her body." Id. at 3-4. Additionally, A.T. "could not see [the assailant's] face during the attacks," because he "had a stocking[3] over his head and face" and "also wore blue latex gloves." Id. at 4.

However, A.T. "saw [the assailant's] eyes, which she described as large and bulging," and heard his voice, which she described as "very distinctive." She testified his voice "sounded like 'Kermit the Frog' because he sounded as though 'he was talking through his throat.'" Ibid. She also "described the assailant as thin and short but very strong." Ibid. Further, "as the assailant drove her from one location to another, she smelled cigar smoke and he told her that he was smoking Black and Mild cigars." Ibid.

When the assailant finally released A.T. at "a car repair facility in Newark, where he . . . placed her in a white Toyota parked in the facility's lot," and the

---

[3] "It appears from the record that the stocking was one leg cut from a pair of women's panty hose." Id. at 14 n.6.

police subsequently "drove [her] around Newark until she was able to identify the car repair lot . . . as well as the white Toyota parked there,"

> [n]ear the spot where the victim was released, the police found a black sheer stocking which, upon being tested, proved to have the victim's DNA on the outside and defendant's DNA on the inside. The police also found a blue latex glove on the ground near the location where the victim was initially kidnapped. The State presented testimony that defendant had previously worked as an auto mechanic in the area of Newark where the victim was released, that he typically wore blue latex gloves at work, and that the car repair facility where the victim was released had a business relationship with defendant's employer.
>
> [Id. at 4-5.]

"One of defendant's former girlfriends, Ms. Teicher," testified for the State and confirmed "that defendant had a very distinctive raspy voice, . . . was short, thin, and muscular," and "smoked Black and Mild cigars." Id. at 5. "She also testified that on multiple occasions during their relationship, defendant would direct her to drive him to vacant lots overgrown with high weeds, where they would have sex in the back of her car." Ibid.

Another witness, Alex Cancinos, who had worked with defendant at a garage,

> testified that in 2006, when defendant was in jail awaiting trial in this case, defendant sent Cancinos a letter asking him to "stage" a rape, with the cooperation

5

of a female friend, and leave some of defendant's blood and pubic hair at the scene. Defendant enclosed packets, apparently containing blood and hair, with the letter. Defendant explained to Cancinos that, if Cancinos did as he asked, it would then appear that someone was trying to frame defendant for a second rape, which he could not possibly have committed because he was in jail. Defendant believed that evidence would, in turn, cast doubt on the State's DNA evidence in the upcoming prosecution. According to Cancinos, he refused defendant's request, and burned the letter.

Ms. Dahl, who had been defendant's girlfriend at the time, corroborated Cancinos's testimony. She testified that Cancinos, who was a mutual friend of hers and defendant, told her about defendant's request, and asked her advice. She testified that Cancinos also showed her the letter, which was in defendant's handwriting, and that she read it. She advised Cancinos not to go along with defendant's plan.

[Id. at 5-6 (footnote omitted).]

In 2016, defendant filed a timely PCR petition. The focus of defendant's petition was his suspected involvement in other sexual assault related offenses committed against two New York victims, H.T. and K.R., and another New Jersey victim, N.W. N.W. was attacked in Elizabeth by two male assailants. Her description of one of the assailants matched Cancinos, whom she later identified. Although N.W. never identified defendant as the second assailant, both Cancinos and defendant were subsequently indicted in connection with her

6

attack, and charged with aggravated sexual assault and related offenses, which charges were ultimately dismissed by the State.

On September 15, 2004, an assailant attempted to abduct H.T. from a New York City street. H.T. successfully fought off the assailant, who fled in a car. Although H.T.'s description of the assailant did not match defendant, during the attack, the assailant dropped a cell phone which contained epithelial DNA matching defendant and a SIM[4] card belonging to N.W. Subsequently, on June 24, 2005, K.R. was sexually assaulted in New York City. Like A.T., she was abducted and driven to various locations by the assailant. New York authorities initially reported that defendant's DNA was discovered on a scarf used by the attacker to cover K.R.'s eyes during the assaults. However, subsequent testing excluded defendant as a match to the scarf. Nonetheless, defendant's DNA was found inside the car in which K.R. was allegedly abducted.

In his PCR petition, defendant asserted there was newly discovered exculpatory evidence pertaining to these three victims that the State withheld until after the trial, thus precluding him from introducing the evidence at trial to establish a third-party guilt defense. Specifically, defendant stated he was not notified until after the trial that he was excluded as a match to the DNA found

---

[4] Subscriber Identification Module.

on the scarf in K.R.'s case, that N.W. identified Cancinos as one of the two assailants who attacked her, that the physical description provided by H.T. did not match defendant, and that there was no blood DNA matching defendant found on the cell phone recovered after H.T.'s attack. Regarding the latter, defendant asserted that the presence of defendant's epithelial DNA, rather than blood DNA, on the phone recovered in the H.T. attack could be explained by the fact that he had owned the phone but got rid of it years before the incident. According to defendant, by excluding him from other attacks believed to have been committed by the same man who attacked A.T., the withheld evidence was essential to challenge the State's case at trial.

Further, defendant argued he was deprived of effective assistance of trial and appellate counsel. Defendant asserted his trial attorney failed to conduct a complete investigation of Cancinos to undermine the veracity of the letter defendant allegedly sent to Cancinos from prison requesting Cancinos to stage a rape with defendant's DNA. According to defendant, an investigation into the prison's procedures would have confirmed that the jelly packets purportedly containing defendant's DNA were not distributed in his prison, and the prison mail log documented all outgoing mail. Further, an investigation would have uncovered evidence to discredit Dahl's corroboration of Cancinos's testimony.

8

Defendant asserted his attorney should have undermined Dahl's ability to recognize defendant's handwriting on the letter with more persuasive evidence than the testimony of defendant's father, which was presented to the jury to refute Dahl's purported familiarity with defendant's signature.

Defendant also asserted trial counsel failed to investigate Cancinos as A.T.'s attacker to establish a third-party guilt defense. Defendant indicated that because he and Cancinos were friends and worked together in a garage in Kearny, Cancinos had access to defendant's belongings and thereby opportunity to frame him. According to defendant, there was compelling evidence pointing to Cancinos as the actual culprit, including N.W.'s identification of Cancinos as one of her two attackers, dismissal of the charges in N.W.'s attack in exchange for his testimony against defendant at trial, N.W.'s SIM card found in the cell phone recovered at the scene of H.T.'s attack, and Cancinos's arrest while driving a customer's vehicle that was similar to the car spotted on surveillance footage where A.T. was kidnapped.

Defendant further asserted that his trial attorney failed to investigate the claims made by the New York assistant district attorney (ADA) regarding DNA discovered on the scarf in the K.R. case and the cell phone in the H.T. case. According to defendant, his attorney's failure to investigate these claims, which

turned out to be erroneous, not only prevented him from introducing a third-party guilt defense but also deprived him of a favorable global plea offer from the New Jersey prosecutor, who stated in a letter dated August 19, 2011, that he was "withdrawing the previously extended plea offer of thirty years on the New Jersey cases," after noting that the New York ADA told him that "[t]hey now have [defendant's] DNA on a second case."[5]

Additionally, defendant asserted his trial attorney failed to effectively consult and communicate with the defense DNA expert. Although defendant acknowledged that the defense expert agreed with the findings of the State's expert regarding the DNA found on the stocking recovered at the scene, he asserted trial counsel failed to consult with the defense expert to facilitate effective cross-examination of the State's expert, and failed to ensure that the defense expert tested other specimens collected in the case that proved to have no evidential value. Moreover, his attorney failed to investigate and introduce evidence, including photographs, showing that defendant wore a stocking on his

---

[5] In the letter, the New Jersey prosecutor also indicated that his withdrawal of the plea offer was "moot" because "defendant was not interested in pleading guilty to anything," having previously rejected the offer and professed his innocence on the record when questioned by the trial court.

head from an early age, to provide a reasonable explanation for defendant's DNA on the stocking.

To support his claim that he received ineffective assistance of appellate counsel, defendant asserted counsel failed to raise on appeal that the trial court erred in overruling trial counsel's objection to admitting testimony regarding the letter allegedly sent to Cancinos under N.J.R.E. 404(b), and erred in preventing trial counsel from cross-examining Cancinos about the details of the rape charge involving N.W., of which defendant was a co-defendant and which was ultimately dismissed by the State in exchange for Cancinos's testimony against defendant.

Following oral argument, on February 1, 2018, the PCR court denied defendant's petition. In an oral decision, the judge reviewed the factual background and procedural history of the case, applied the governing legal principles, and concluded defendant "woefully failed" to satisfy all three prongs of the test enunciated in State v. Carter, 85 N.J. 300, 314 (1981) to warrant granting a new trial. The judge found defendant failed to establish that the claimed newly discovered evidence was "material" to the case involving A.T., failed to "identif[y]" when the evidence was discovered or show that the

evidence was not "discoverable at trial,"[6] and failed to establish that the evidence was of the sort that would probably change the jury's verdict if a new trial was granted.

Additionally, the judge determined defendant failed to establish a prima facie case of IAC. The judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. In rejecting defendant's assertion that he was entitled to an evidentiary hearing, the judge

---

[6] Although defendant claimed he only became aware of the evidence after he was tried and convicted in New Jersey and extradited to New York to face the New York charges, the claim was never substantiated by competent evidence in the record and the reports from the New York authorities all predate the trial. Moreover, because the New Jersey prosecutor was not obligated to turn over reports prepared by the New York or FBI authorities, any failure to disclose the reports could not constitute a violation of Brady v. Maryland, 373 U.S. 83 (1963). Even if the reports could be construed as exculpatory evidence, they exculpate defendant of the New York rapes, not A.T.'s. Notably, the judge rejected defendant's contention that "a joint investigation" was confirmed by the prosecutor's "affirmation" in an April 19, 2011 letter. Instead, the judge explained the prosecutor was "inartful in his words." See State v. Knight, 283 N.J. Super. 98, 115 (App. Div. 1995) (finding that the "mere transfer of information or notification of the potential existence of a criminal in another's jurisdiction will not establish an agency relationship.").

concluded defendant failed to present any issues that could not be resolved by reference to the existing record.

In conducting the <u>Carter</u> analysis, the judge stated that the introduction of evidence "that may or may not exonerate" him in the attacks on the New York victims, H.T. and K.R., would not have exonerated him of the crimes involving A.T. The judge noted that the

> rapes were separate events. Evidence of exoneration for a New York rape would not exonerate . . . defendant for the rape of a New Jersey victim. Just because the State may have believed at one time the rapes were committed by the same individual, . . . does not mean that if found not guilty of one rape, you're not guilty of both.

Moreover, as the judge pointed out, "[a]t best, if all [defendant's] claims . . . are true," the newly discovered DNA evidence only challenged "one piece of evidence" in each New York case. Thus, the proffered newly discovered evidence did not exonerate him entirely of the New York charges, was not "probative of any issue" in the New Jersey case, and had no "relevanc[e] to . . . the A.T. trial." Further, defendant "[b]eing exculpated in the rape of N.W. would not affect [defendant's] conviction in regards to A.T."

The judge explained that because "the trial court denied the State's [N.J.R.E.] 404(b) motion before the trial," "if the defense tried to introduce that

13

other evidence, it certainly would have opened up the door to other evidence," would have resulted in "trials within trials," and, "in fact, would also likely backfire on . . . defendant." The judge concluded that "evidence that may or may not exculpate [defendant] on a completely separate crime is not probative to the trial of A.T. Even if a jury were to hear the evidence [defendant] argues should have been presented, even if they heard the defense of third-party guilt, it would not matter." According to the judge, the "State presented . . . numerous amounts of evidence at trial against [defendant], all of which remain[ed] uncontested in this PCR."

Turning to defendant's IAC claims, the judge found that "[a]ll of [defendant's] hand-picked issues with his trial and appellate counsels [did] not amount to [IAC]." According to the judge, defendant "failed to articulate a single reason why [his] appellate attorney should have raised [these] issue[s] on appeal, or why his trial attorney['s] strategy fell below the objectively reasonable standard; therefore [defendant] cannot succeed on prong one." As to prong two, the judge concluded,

> [e]ven if all the evidence and trial strategies were used, . . . [defendant] has not proven that the outcome of the trial would have been different.
>
> The State, at the trial, relied on the DNA of [defendant] found on the nylon stocking and also

14

containing . . . the DNA of A.T. Again, it was found near the place where A.T. was left after being raped, and A.T. testified the man wore the stocking on his face. [Defendant] has not shown how any of the irrelevant evidence or trial strategies would have overcome the State's case in chief. As such, . . . defendant fails [Strickland]'s prong two.

In rejecting defendant's contention that he was entitled to an evidentiary hearing, the judge found that "[a]n evidentiary hearing [would] not aid [the court] in this case" because "the allegations are quintessentially speculative and not relevant," and defendant "failed to establish a likelihood [of] . . . success" on the merits. The judge explained

I find this because even if [defendant] could present evidence that his claims in the PCR are true, it would still all be irrelevant to the trial for the sexual assault of A.T. [Defendant's] . . . fatal flaw throughout this entire [PCR] . . . is that he argued that if there was exculpatory evidence in a separate unrelated trial not used in the State's case in chief here, it would somehow be relevant to the trial of . . . A.T.

This assertion . . . is inaccurate. It does not matter that the State believed all the aforementioned victims were assaulted by the same individual, because the trials were severed or separated by jurisdiction. The trial that [defendant] has motion[ed] for [PCR] only pertains to the trial of A.T.

Defendant appealed from the February 1, 2018 order denying his PCR petition. While the appeal was pending, he moved for a limited remand. In

15

support, PCR counsel certified that "[d]uring the pendency of th[e] appeal," "defendant notified [her] that FBI records existed detailing the investigation of [K.R.'s] sexual assault." According to PCR counsel, the records prepared by the FBI in 2006 "indicated the car investigated in the K.R. assault was originally owned by defendant's friend's sister and defendant did work on the interior of the car and assisted in the sale of th[e] car." Counsel explained that the FBI records "establish[ed] a logical explanation for defendant's DNA being found in th[e] car" to counter the State's argument "that the fact defendant was excluded from the DNA sample on . . . K.R.['s] scarf [was] irrelevant because there was a match to defendant's DNA" found "inside the car" in which "K.R. was abducted."

On June 26, 2019, we granted defendant's motion for a limited remand for the PCR judge to consider the FBI records. On September 12, 2019, following oral argument, the judge determined that the newly discovered FBI records did not "change [the court's] opinion whatsoever." The judge explained that while the evidence may affect the K.R. case, "there [was] no link to [the] A.T. [case]," and, in all likelihood, a judge would never have admitted the evidence as third-party guilt evidence. See State v. Koedatich, 112 N.J. 225, 301 (1988) (noting

16

"[t]here must be some link between the [proffered] evidence and the victim or the crime" to support the admission of third-party guilt evidence).

On appeal, in his counseled brief, defendant raises the following points for our consideration:

> POINT I
>
> THE STATE WITHHELD MATERIAL, EXCULPATORY EVIDENCE OBTAINED FROM A JOINT INVESTIGATION WITH NEW YORK AND BY DOING SO GREATLY IMPACTED DEFENDANT'S ABILITY TO CONDUCT A COMPLETE DEFENSE THEREBY WARRANTING A NEW TRIAL.
>
> POINT II
>
> DEFENDANT WAS DEPRIVED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO COUNSEL'S FAILURE TO PURSUE THE NECESSARY FORENSIC EVALUATION, ESTABLISH DEFENDANT'S DNA COULD HAVE REASONABLY BEEN FOUND ON THE STOCKING, INVESTIGATE THE VERACITY OF THE LETTER PURPORTEDLY SENT TO ALEX CANCINOS AND INVESTIGATE REASONABLE CLAIMS TO SUPPORT A THIRD-PARTY GUILT DEFENSE.
>
>> A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL TO PURSUE THE NECESSARY FORENSIC EVALUATIONS AND CONSULTATIONS.

B. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO FAILURE TO ESTABLISH DEFENDANT'S DNA COULD HAVE REASONABLY BEEN FOUND ON STOCKING BECAUSE DEFENDANT WORE A STOCKING ON HIS HEAD FROM A YOUNG AGE.

C. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO FAILURE TO INVESTIGATE VERACITY OF LETTER PURPORTEDLY SENT TO ALEX CANCINOS.

D. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO FAILURE TO INVESTIGATE THE K.R. AND H.T. ATTACKS, DEPRIVING DEFENDANT OF A THIRD-PARTY GUILT DEFENSE AND A FAVORABLE GLOBAL PLEA.

E. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO FAILURE TO INVESTIGATE ALEX CAN[C]INOS FOR THIRD-PARTY GUILT DEFENSE.

POINT III

DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL DUE TO COUNSEL'S FAILURE TO RAISE THAT THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE TESTIMONY REGARDING THE PURPORTED LETTER SENT TO ALEX CANCINOS AND ERRONEOUSLY LIMITED TRIAL COUNSEL'S CROSS-EXAMINATION OF ALEX CANCINOS.

A. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL REGARDING THE TRIAL COURT'S ERRONEOUS RULING ALLOWING TESTIMONY ABOUT AN ALLEGED LETTER FROM DEFENDANT.

B. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL REGARDING THE TRIAL COURT'S ERRONEOUS LIMITATION ON TRIAL COUNSEL'S CROSS-EXAMINATION OF ALEX CANCINOS.

In his counseled brief submitted following the limited remand, defendant raises the following additional point for our consideration:

[POINT IV]

ON A LIMITED REMAND, THE PCR COURT MIS[]APPLIED THE LEGAL STANDARD FOR ADMISSION OF THIRD-PARTY GUILT AND OTHER CRIME EVIDENCE IN CONCLUDING THERE WAS NOT A SUFFICIENT LINK BETWEEN THE EXCULPATORY EVIDENCE SUBMITTED BY DEFENDANT REGARDING THE K.R. CASE AND THE CURRENT MATTER.

In his pro se brief, defendant raises the following points for our consideration:

POINT I

BECAUSE THE DEFENDANT UNAMBIGUOUSLY SHOWED THAT THE STATE DISTORTED AND WITHHELD MATERIAL, EXCULPATORY

EVIDENCE FROM THE DEFENSE AND BECAUSE IT IMPACTED THE DEFENSE'S STRATEGIES PREPARATIONS, AND ABILITY TO PRESENT A COMPLETE DEFENSE, INCLUDING A THIRD-PARTY GUILT DEFENSE, THE PCR COURT SHOULD HAVE GRANTED HIS MOTION FOR [PCR], AT A MINIMUM, THE PCR COURT SHOULD HAVE HELD AN EVIDENTIARY HEARING ON THE ISSUE.

. . . .

POINT II

BECAUSE TRIAL COUNSEL WAS A DEPUTY MAYOR, COUNCILMAN, AND MUNICIPAL PROSECUTOR IN AND AROUND THE COUNTIES THE ATTACKS OCCURRED AND WERE INVESTIGATED, AND THE DEFENDANT WAS CHARGED AND INDICTED FOR THE ATTACKS, TRIAL COUNSEL'S DUAL REPRESENTATION CREATED A CONFLICT THAT UNDERMINED THE IMPARTIALITY OF TRIAL COUNSEL THAT VIOLATED THE DEFENDANT'S RIGHT TO FAIR TRIAL, INCLUDING EFFECTIVE ASSISTANCE OF [COUNSEL]. THE PCR COURT SHOULD HAVE GRANTED THE DEFENDANT'S PCR MOTION ON THIS CLAIM, AT A MINIMUM, THE PCR COURT SHOULD HAVE HELD AN EVIDENTIARY HEARING ON THE ISSUE.

In evaluating these arguments, we apply well-established legal principles. Regarding the new trial motion, "[a] jury verdict rendered after a fair trial should not be disturbed except for the clearest of reasons." State v. Ways, 180 N.J. 171, 187 (2004). "A motion for a new trial is addressed to the sound discretion of

20

the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion." State v. Puchalski, 45 N.J. 97, 107 (1965) (quoting State v. Artis, 36 N.J. 538, 541 (1962)).

In particular, motions for a new trial based on newly discovered evidence are "not favored and should be granted with caution by a trial court since [they] disrupt[] the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing State v. Haines, 20 N.J. 438, 443 (1956)). "Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Ways, 180 N.J. at 187-88. However, we "must keep in mind that the purpose of post-conviction review in light of newly discovered evidence is to provide a safeguard in the system for those who are unjustly convicted of a crime." Id. at 188.

To that end, to obtain a new trial based upon a claim of newly discovered evidence, a criminal defendant must establish that the evidence is: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if

21

a new trial were granted." Carter, 85 N.J. at 314. All three prongs of the Carter test must be satisfied before a new trial is warranted, Ways, 180 N.J. at 187, and defendant bears the burden of establishing each prong, State v. Smith, 29 N.J. 561, 573 (1959).

As to the first prong, evidence is material if it "would 'have some bearing on the claims being advanced.'" Ways, 180 N.J. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). "Clearly, evidence that supports a defense, such as . . . third-party guilt, . . . would be material." Ibid. Because determining whether evidence is material "requires an evaluation of the probable impact such evidence would have on a jury verdict," our "focus properly turns to prong three of the Carter test." Id. at 188-89. Thus, the "analysis of newly discovered evidence essentially merges the first and third prongs of the Carter test," State v. Behn, 375 N.J. Super. 409, 432 (App. Div. 2005), which are "inextricably intertwined." State v. Nash, 212 N.J. 518, 549 (2013).

Under that rubric, "[t]he characterization of evidence as 'merely cumulative, or impeaching, or contradictory' is a judgment that such evidence is not of great significance and would probably not alter the outcome of a verdict." Ways, 180 N.J. at 189. In contrast, evidence "that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be

considered merely cumulative, impeaching, or contradictory." Ibid. In short, the "power of the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence," id. at 191-92, and the "central issue" is whether the newly discovered evidence has the power to "shake the very foundation of the State's case and almost certainly alter the earlier jury verdict." Nash, 212 N.J. at 549-50.

The second prong of the Carter test "recognizes that judgments must be accorded a degree of finality." Ways, 180 N.J. at 192. That prong therefore requires that the "defense . . . 'act with reasonable dispatch in searching for evidence before the start of the trial.'" Nash, 212 N.J. at 550 (quoting Ways, 180 N.J. at 192). Under that prong, the evidence must not have been discoverable prior to trial through "the exercise of 'reasonable diligence'" in the context of the specific circumstances of each case. Behn, 375 N.J. Super. at 428. Reasonable diligence does not, however, require "totally exhaustive or superhuman effort." Ibid. That said, evidence "clearly capable of altering the outcome of a verdict that could have been discovered by reasonable diligence at the time of trial would almost certainly point to [IAC]." Nash, 212 N.J. at 550 (quoting Ways, 180 N.J. at 192).

To establish a prima facie claim of IAC, a defendant must satisfy the two-prong <u>Strickland</u>/<u>Fritz</u> test, and "bears the burden of proving" both prongs of an IAC claim "by a preponderance of the evidence." <u>State v. Gaitan</u>, 209 N.J. 339, 350 (2012). Specifically, a defendant must show that (l) "counsel's performance was deficient" and he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 687, 694; <u>see also</u> <u>Fritz</u>, 105 N.J. at 52. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. This test applies equally to a defendant's claim of ineffective assistance of trial or appellate counsel. <u>State v. Gaither</u>, 396 N.J. Super. 508, 513 (App. Div. 2007).

Under the first <u>Strickland</u> prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities." <u>State v. Hess</u>, 207 N.J. 123, 147 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689-90). While "counsel is strongly presumed to have rendered adequate assistance," <u>Strickland</u>, 466 U.S. at 690, as measured by a standard of "reasonable competence[,]" <u>Fritz</u>, 105 N.J.

at 53, "'[r]easonable competence' does not require the best of attorneys," <u>State v. Davis</u>, 116 N.J. 341, 351 (1989), and "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." <u>Strickland</u>, 466 U.S. at 688-89.

For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial.
>
> [<u>State v. Castagna</u>, 187 N.J. 293, 314-15 (2006) (citations, internal quotation marks, and brackets omitted).]

Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689.

Under the second <u>Strickland</u> prong, defendant must prove prejudice. <u>Fritz</u>, 105 N.J. at 52. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the judgment." Strickland, 466 U.S. at 691. This prong "is an exacting standard" and "'[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'" State v. Allegro, 193 N.J. 352, 367 (2008) (alteration in original) (quoting Castagna, 187 N.J. at 315).

Merely raising a claim for PCR does not entitle a defendant to relief or an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant." State v. Preciose, 129 N.J. 451, 463 (1992). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative." R. 3:22-10(e)(2). Indeed, the defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

In turn, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing."  State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013).  "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted."  Ibid. (alteration in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).  We also typically review a PCR petition with "deference to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'"  State v. Harris, 181 N.J. 391, 415 (2004) (alteration in original) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).  However, where, as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'"  State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting Harris, 181 N.J. at 421).  We also review de novo the legal conclusions of the PCR judge.  Harris, 181 N.J. at 415-16 (citing Toll Bros., 173 N.J. at 549).

Applying these principles, we first address defendant's contention that the claimed newly discovered evidence prevented him from effectively raising a third-party guilt defense at trial.  Like the PCR court, we conclude defendant

27

failed to establish all three prongs of the <u>Carter</u> test.  When examining the impact of newly discovered evidence, it must be "placed in context with the trial evidence" and considered in relation to the State's proofs at trial.  <u>Ways</u>, 180 N.J. at 195 (characterizing State's proofs as "far from overwhelming").  Here, the nylon stocking found at the scene containing both defendant's and A.T.'s DNA constitutes compelling and uncontested evidence of defendant's guilt that is untainted by a third-party guilt defense.  Thus, focusing on prongs one and three of the <u>Carter</u> test, we are satisfied the claimed newly discovered evidence would not "shake the very foundation of the State's case" nor "alter the earlier jury verdict."  <u>Nash</u>, 212 N.J. at 549 (quoting <u>Ways</u>, 180 N.J. at 189).  Accordingly, defendant's motion for a new trial was properly denied.

For the same reason, defendant's IAC claim must fail.  Even if defense counsels' performance was deficient as defendant asserts, defendant cannot demonstrate the requisite prejudice under the second <u>Strickland</u> prong, given the State's compelling evidence of defendant's guilt.  Defendant argues that if his attorney had investigated his claim that he wore nylon stockings on his head from a young age, it would have provided a reasonable explanation for the presence of his DNA on the stocking found at the scene.  Indeed, an attorney's failure to investigate "is a serious deficiency that can result in the reversal of a

conviction." <u>Porter</u>, 216 N.J. at 353. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691.

Here, defendant's argument overlooks the fact that the stocking contained both his DNA and the victim's, A.T., and no amount of investigation of defendant's past practice would change that fact. Similarly, we reject defendant's contention that he was prejudiced by trial counsel's purported failure to effectively challenge the DNA evidence found on the stocking because even the defense DNA expert agreed with the findings of the State's experts. We also reject defendant's assertion that he was prejudiced by counsels' purported failure to discredit Cancinos because Cancinos's involvement had no impact on the State's most damning evidence, the stocking found at the scene with defendant's and the victim's DNA. Additionally, defendant's claim that he was prejudiced by missing out on the New Jersey prosecutor's global plea offer is belied by the record where he expressly rejected the offer, and adamantly professed his innocence.

Based on our decision, we need not address defendant's remaining arguments, which lack sufficient merit to warrant discussion here. <u>R.</u> 2:11-3(e)(2). Briefly, we reject defendant's argument that there is a presumption of

prejudice because his trial attorney had a conflict of interest arising from dual representation. According to defendant, his attorney held various local governmental positions in Essex and Hudson County at the time of the trial, including serving "as the municipal prosecutor in a number of towns." We reject defendant's assertion as unsupported by any competent evidence in the record. There is no affidavit or certification to support the claim. "That type of showing is necessary to advance defendant's PCR claim." Gaither, 396 N.J. Super. at 514.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5573-17T1